829 F.Supp. 492

Torrington Co., plaintiff *v.* United States, defendant, and NMB Singapore Ltd., Pelmec Industries (PTE.) Ltd., and NMB Corp., defendant-intervenors

Court No. 91–08–00565

(Dated June 8, 1993)

*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Margaret E.O. Edozien, Lane S. Hurewitz, Robert A. Weaver* and *Margaret L.H. Png)* for plaintiff.

*Stuart E. Schiffer,* Acting Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Velta A. Melnbrencis* and *Jane E. Meehan);* of counsel: *Alicia Greenidge, Dean A. Pinkert* and *Craig R. Giesze,* Attorney-Advisors, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

*Tanaka Ritger & Middleton (H. William Tanaka, Michele N. Tanaka* and *Michael J. Brown)* for defendant-intervenors NMB Singapore Ltd., Pelmec Industries (Pte.) Ltd. and NMB Corporation.

## OPINION

Tsoucalas, *Judge:* Plaintiff, The Torrington Company ("Torrington"), commenced this action to challenge certain aspects of the Department of Commerce, International Trade Administration's ("ITA") final results in the first administrative review of imports of antifriction bearings from Singapore. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Singapore; Final Results of Antidumping Duty Administrative Review ("Final Results"),* 56 Fed. Reg. 31,759 (1991). Substantive issues raised by the parties in the underlying administrative proceeding were addressed by the ITA in the issues appendix to *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review ("Issues Appendix"),* 56 Fed. Reg. 31,692 (1991).

## BACKGROUND

On June 11, 1990, the ITA initiated an administrative review of imports of ball bearings and parts thereof from Singapore. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews,* 55 Fed. Reg. 23,575 (1990).

On March 15, 1991, the ITA published its preliminary determination in the administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts thereof from Singapore; Preliminary Results of Antidumping Duty Administrative Review,* 56 Fed. Reg. 11,191 (1991).

On July 11, 1991, the ITA published its Final Results in this proceeding. *Final Results,* 56 Fed. Reg. 31,759.

Torrington moves pursuant to Rule 56.1 of the Rules of this Court for summary judgment on the agency record alleging that the following actions by the ITA were unsupported by substantial evidence on the administrative record and not in accordance with law: the ITA's (1) method of calculating cash deposit rates for estimated duties; (2) treatment of antifriction bearings imported into foreign trade zones ("FTZ"); and (3) in regard to exporter's sales price ("ESP") transactions, allowance of an adjustment to foreign market value ("FMV") for inventory carrying costs. *Memorandum of Points and Authorities in Support of The Torrington Company's Motion for Summary Judgment on the Agency Record ("Torrington's Memorandum")* at 15–42.

## DISCUSSION

This Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F. Supp. 1252, 1255 (1988).

### 1. *Calculation of Cash Deposit Rates:*

In this administrative review, the ITA used two different methodologies for the actual calculation of dumping margins in cases where ESP sales were used: one for assessing duties on entries covered by the review, and the other for setting the cash deposit rate on future entries of the subject merchandise. *Final Results,* 56 Fed. Reg. at 31,761–62; *Issues Appendix,* 56 Fed. Reg. at 31,698–702. To calculate the assessment rate for ESP sales, the ITA "divide[d] the total PUDD [potential uncollected dumping duties—calculated as the total difference between foreign market value and U.S. price for an exporter] for the reviewed sales by the *total entered value* of those reviewed sales * * *" *Issues Appendix,* 56 Fed. Reg. at 31,698–99 (emphasis added). To calculate the estimated cash deposit rate for ESP sales, the ITA "divided the total PUDD for each exporter by the *total net U.S. price* for that exporter's sales * * *" *Id.* at 31,699 (emphasis added).

Torrington argues that the ITA's use of a methodology which results in an estimated cash deposit rate different from the assessment duty rate was unsupported by substantial evidence on the record and not in accordance with law. *Torrington's Memorandum* at 15–21.

Defendant argues that its actions were supported by substantial evidence on the administrative record and otherwise in accordance with law. *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("Defendant's Memorandum")* at 6–13. In addition, defendant argues that this issue is moot because of the publication of superseding cash deposit rates in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews,* 57 Fed. Reg. 28,360 (1992). *Defendant's Memorandum* at 3–6.

For a more detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.,* 17 CIT at 205, 818 F. Supp. 1563 (1993).

The Court agrees with the defendant that this issue is now moot. However, the Court directs the defendant to this Court's decision on this issue in *Federal-Mogul,* 17 CIT at 102–03, 813 F. Supp. 856 (1993).

### 2. *Treatment of Antifriction Bearings Imported into Foreign Trade Zones:*

Torrington challenges the ITA's refusal to require cash deposit of estimated antidumping duties on entries of antifriction bearings ("AFBs") imported into foreign trade zones. *Torrington's Memorandum* at 21–33.

For a detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.,* 17 CIT at 205–09, 818 F. Supp. 1563 (1993).

This Court adheres to its decision on this issue in *Torrington Co.,* 17 CIT at 209–10, 818 F. Supp. 1563 (1993). This Court finds that the Foreign Trade Zone statute on its face exempts foreign merchandise within a FTZ from the imposition of antidumping duties until that merchandise is brought into the U.S. customs territory, unless some other provision of the Foreign Trade Zone statute or the regulations promulgated pursuant to that law require otherwise.

At the time of the imports in question the only way that antidumping duties could be applied to foreign merchandise within a FTZ was if that merchandise was declared privileged pursuant to 19 C.F.R. § 146.41 (1991). While it is true that the FTZ Board has required such a declaration in granting applications for the creation or modification of a zone in the past, this Court finds no support for the contention that the ITA was *required* to request the FTZ Board, or that the FTZ Board was required on its own initiative, to impose such restrictions on all preexisting FTZs. Therefore, this Court finds that *at the time of the imports in question* there was no statute or regulation that required that antidumping duties be imposed on merchandise imported into a FTZ until such time as the merchandise enters the Customs territory of the U.S.

Torrington also argues that imports of AFBs from Singapore into FTZs which were subsequently re-exported to a third country, without entering the customs territory of the U.S., should be subject to cash deposits and assessment of antidumping duties. *Torrington's Memorandum* at 33–34.

For the reasons stated above and in this Court's opinion in *Torrington Co.,* 17 CIT at 209–10, 818 F. Supp. 1563 (1993), this Court finds that AFBs imported into FTZs and re-exported without entering the U.S. customs territory are not subject to cash deposits and assessment of antidumping duties. *See also Torrington Co.,* 17 CIT at 212, 818 F. Supp. 1563 (1993) (AFBs imported into U.S. and reexported without sale in U.S. not subject to assessment of antidumping duties).

## 3. *Inventory Carrying Costs:*

In the Final Results of this administrative review the ITA correctly adjusted ESP for imputed inventory carrying costs pursuant to 19 U.S.C. § 1677a(e)(2) (1988). Torrington does not challenge this adjustment.

Pursuant to its new administrative practice, the ITA also made a corresponding adjustment to FMV for imputed inventory carrying costs when comparing ESP sales to FMV sales.

Torrington objects to this adjustment by the ITA to FMV for imputed inventory carrying costs. *Torrington's Memorandum* at 34–42.

For a detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.,* 17 CIT at 212–14, 818 F. Supp. 1563 (1993).

This Court adheres to its decision on this issue in *Torrington Co.,* 17 CIT at 214–16, 818 F. Supp. 1563 (1993), and finds that the ITA's adjustment to FMV for imputed inventory carrying costs pursuant to 19 C.F.R. § 353.56(b)(2) (1991) was a reasonable exercise of the ITA's discretion in implementing the antidumping duty statute and is affirmed.

### CONCLUSION

ITA's determination is affirmed in all respects and this case is dismissed.