The TORRINGTON COMPANY, Plaintiff,

Federal–Mogul Corporation, Plaintiff–Intervenor,

v.

UNITED STATES, Defendant,

SKF USA Inc. and SKF (U.K.) Limited, Defendant–Intervenors.

Court No. 91–08–00570.

United States Court of International Trade.

Oct. 14, 1993.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Geert De Prest, Margaret E.O. Edozien, William A. Fennell, Wesley K. Caine, Myron A. Brilliant, Robert A. Weaver and Amy S. Dwyer, Washington, DC, for plaintiff.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley, Larry Hampel and Joseph A. Perna, V, Washington, DC, for plaintiff-intervenor Federal–Mogul Corp.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis and Jane E. Meehan; John D. McInerney, Acting Deputy Chief Counsel for Import Admin., Dean A. Pinkert and Stephen J. Claeys, Atty.–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Howrey & Simon, Herbert C. Shelley, Scott A. Scheele, Alice A. Kipel, Thomas J. Trendl, Anne Talbot and Juliana M. Cofrancesco, Washington, DC, for defendant-intervenors SKF USA Inc. and SKF (U.K.) Ltd.

### OPINION

TSOUCALAS, Judge:

Plaintiff, The Torrington Company ("Torrington"), and plaintiff-intervenor, Federal–Mogul Corporation ("Federal–Mogul"), commenced this action to challenge certain aspects of the Department of Commerce, International Trade Administration's ("ITA") final results in the first administrative review of imports of antifriction bearings from the United Kingdom. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the United Kingdom; Final Results of Antidumping Duty Administrative Reviews*, 56 Fed.Reg. 31,769 (1991). Substantive issues raised by the parties in the underlying administrative proceeding were addressed by the ITA in the issues appendix to *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review ("Issues Appendix")*, 56 Fed.Reg. 31,692 (1991).

## Background

In *Torrington Co. v. United States,* 17 CIT ——, ——, 824 F.Supp. 1095, 1101 (1993), this Court remanded this case to the ITA to "add the full amount of [value added tax] paid on each sale in the home market to [foreign market value] without adjustment."

On July 23, 1993, the ITA filed with this Court its Final Results of Redetermination Pursuant to Court Remand, *The Torrington Company v. United States,* 824 F.Supp. 1095 (CIT 1993) ("*Remand Results* "). In its Remand Results, the ITA added to foreign market value ("FMV") the amount of value added tax ("VAT") paid on sales of the subject merchandise in the home market without adjustment and also added the exact same amount to United States price ("USP"). *Remand Results* at 2–5.

## Discussion

ITA's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

Torrington and Federal–Mogul challenge the ITA's treatment of the United Kingdom's VAT on remand. *Memorandum of The Torrington Company in Support of its Motion for a Remand ("Torrington's Memorandum" )* at 2–7; *Comments of Federal–Mogul Corporation, Plaintiff–Intervenor, Concerning Defendant's Final Results of Redetermination Pursuant to Court Remand ("Federal–Mogul's Comments" )* at 4–20.

In its Remand Results, as instructed by this Court, the ITA added the amount of VAT paid on each sale in the home market without making a circumstance of sale ("COS") adjustment to this amount. In addition and on its own initiative, the ITA added the exact same amount to USP instead of following its usual practice of applying the *ad valorem* VAT rate to the net USP after all adjustments had been made and adding this amount to USP. *Remand Results* at 2–5; *see Issues Appendix,* 56 Fed.Reg. at 31,729. ITA's rationale for its new approach is based on its interpretation of the United States Court of Appeals for the Federal Circuit's recent opinion on the VAT issue in *Zenith Elecs. Corp. v. United States,* 988 F.2d 1573, 1580–82 (1993). *Remand Results* at 2. ITA implemented its stated methodology and recalculated margins only for respondents who did not participate in the Second Administrative Review because the ITA's new methodology only changes cash deposit rates which are still in effect only for these respondents. *Id.* at 4–5.

Defendant argues that the ITA's new VAT methodology is responsive to this Court's remand order. Specifically, the defendant argues that this new methodology adds the full amount of VAT to FMV and does not make a COS adjustment to the amount of VAT added to FMV. *Remand Results* at 2–3; *Defendant's Opposition to Motion of The Torrington Company for a Remand ("Defendant's Opposition" )* at 3; *Defendant's Rebuttal to the Comments of Federal–Mogul Corporation Concerning Defendant's Final Results of Redetermination Pursuant to Court Remand ("Defendant's Rebuttal" )* at 4.

In addition, defendant argues that the ITA's new methodology is in accord with *Zenith,* 988 F.2d at 1580–82. The court in *Zenith* held that the ITA was not allowed to make a COS adjustment to FMV to achieve tax neutrality by eliminating the so-called multiplier effect of 19 U.S.C. § 1677a(d)(1)(C) (1988).[1] The court reasoned

---

1. 19 U.S.C. § 1677a(d)(1)(C) states:

   **(d) Adjustments to purchase price and exporter's sales price**

   The purchase price and the exporter's sales price shall be adjusted by being—

   (1) increased by—

   (C) the amount of any taxes imposed in the country of exportation directly upon the exported merchandise or components thereof, which have been rebated, or which have not

that 19 U.S.C. § 1677a(d)(1)(C) is the sole provision of the antidumping duty statute that deals with the treatment of VATs. As a result, 19 U.S.C. § 1677b(a)(4)(B) (1988), which allows adjustments to FMV for differences in circumstances of sale, does not apply and cannot be used to achieve tax neutrality. *Zenith*, 988 F.2d at 1580–82.

The court also stated that:

> By engaging in dumping, the exporters themselves are responsible for the multiplier effect. The multiplier effect does not create a dumping margin where one does not already exist. Only when pre-tax FMV exceeds USP and a foreign nation assesses an ad valorem domestic commodity tax does section 1677a(d)(1)(C) operate to accentuate the dumping margin. Without a dumping margin (when pre-tax FMV equals [or is less than] USP), even assessment of an *ad valorem* tax creates no multiplier effect. The multiplier effect thus occurs only when a dumping margin already exists. If a foreign manufacturer does not export its wares at less than fair value, it will not suffer disadvantage from the operation of section 1677a(d)(1)(C).

> Moreover, the enactment history of section 1677a(d)(1)(C) does not suggest that Congress sought tax neutrality when it fashioned the adjustment provision.

*Zenith*, 988 F.2d at 1581–82. It is clear from this statement that tax neutrality is irrelevant to the proper application of 19 U.S.C. § 1677a(d)(1)(C). *See also Federal–Mogul*

been collected, by reason of the exportation of the merchandise to the United States, but only to the extent that such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation; ....

The multiplier effect can be seen in the following example taken from *Zenith Elecs. Corp. v. United States*, 10 CIT 268, 273 n. 9, 633 F.Supp. 1382, 1386 n. 9 (1986), *appeal dismissed*, 875 F.2d 291 (Fed.Cir.1989):

> Suppose the pre-tax home market price for a certain model of Japanese television is equal to $100, while the purchase price for the same model when sold for export to the United States is $90. In this tax-free comparison, the absolute margin of dumping would be $10 ($100–$90) and the *ad valorem* margin would be 11.1% ($10/$90).

*Corp. v. United States*, 17 CIT ——, ——, 813 F.Supp. 856, 864–65 (1993).

Defendant argues that the court in *Zenith* only decided that the ITA could not make a COS adjustment to FMV to obtain tax neutrality. Defendant argues that the court's decision does not mean that the ITA cannot adopt an interpretation of the statute which would result in tax neutrality. Defendant states that its position is affirmed by footnote 4 in *Zenith* which states:

> The statute by its express terms allows adjustment of USP in the *amount* of taxes on the merchandise sold in the country of exportation. While perhaps cumbersome, Commerce may eliminate the multiplier effect by adjusting USP by the amount, instead of the rate, of the *ad valorem* tax.

988 F.2d at 1582 n. 4 (emphasis in original); *Defendant's Opposition* at 3–5; *Defendant's Rebuttal* at 4–5, 7–9.

Defendant argues that there are two valid interpretations of the statutory language in regard "to whether the tax to be added to USP is (1) the tax that would have been charged on the exported merchandise, had the foreign country taxed exports; or (2) the tax that would have been charged on the exported merchandise, had it been sold in the foreign market." *Defendant's Opposition* at 6; *Defendant's Rebuttal* at 6–7. ITA has chosen the second interpretation and defendant argues that this interpretation is entitled to substantial deference citing *Chevron v. Natural Resources Def. Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Since the Japanese commodity tax is 15%, the tax on the home market sale equals $15 (15% of $100). If we assume that this tax is fully shifted forward to the home market purchaser, then the after-tax home market price equals $115. By contrast, the amount of tax rebated or not collected on the exported television because it was sold for export would equal only $13.50 (15% of $90). Hence, if the United States price were increased by this latter amount, in accordance with the terms of 19 U.S.C. § 1677a(d)(1)(C), the adjusted calculation of USP would be $103.50 ($90 + $13.50). The absolute margin, determined by subtracting the adjusted USP from the after-tax home market price, would be $11.50 ($115–$103.50), an amount greater than the $10 absolute margin calculated in the tax-free comparison, above. The *ad valorem* margin, however, would be identical, at 11.1% ($11.50/$103.50).

*Defendant's Opposition* at 6; *Defendant's Rebuttal* at 7.

SKF USA Inc. and SKF (U.K.) Limited ("SKF") agree with the ITA's treatment of the United Kingdom's VAT on remand and support the defendant's arguments on this issue. *Comments of SKF Regarding Final Remand Results ("SKF's Comments")* at 1–2 and attachment.

In addition, SKF argues that the ITA should be required to recalculate margins for all reviewed respondents because it is possible that the ITA may use uncorrected cash deposit rates from the First Administrative Review as best information available ("BIA") in subsequent proceedings. *Id.* at 3–4.

Torrington and Federal–Mogul argue that footnote 4 in *Zenith* is merely dicta and not the holding of the Court of Appeals on this issue. *Torrington's Memorandum* at 5–7; *Federal–Mogul's Comments* at 12–16.

In addition, Torrington argues that footnote 4 is an inaccurate statement of the law. Torrington argues that 19 U.S.C. § 1677a(d)(1)(C) states that "the amount of any taxes imposed in the country of exportation directly upon the *exported merchandise* ... which have been rebated or which have not been collected, by reason of the exportation ..." must be added to USP. *Torrington's Memorandum* at 6 (emphasis in original). Nowhere does the statute discuss using the amount of tax paid on home market sales.

Federal–Mogul also points out that, until now, the ITA has consistently interpreted the statute to require the application of the *ad valorem* VAT rate to net USP to derive the amount that is added to USP. Federal–Mogul states:

> First, Commerce never adjusts USP by a rate of an *ad valorem* tax. It adjusts USP by an *amount* of tax—an amount which is arrived at by applying a rate to a tax base. The *amount* of tax used in the adjustment to USP has been the statutory amount of tax forgiven on exportation.

*Federal–Mogul's Comments* at 14 (emphasis in original).

This Court remanded this issue for the ITA "to add the full amount of VAT paid on each sale in the home market to FMV without adjustment." *Torrington,* 17 CIT at ——, 824 F.Supp. at 1101. Nowhere did this Court discuss changing the ITA's method of adding an amount to USP pursuant to 19 U.S.C. § 1677a(d)(1)(C) to account for the United Kingdom's VAT. In fact, this Court implicitly affirmed the ITA's methodology for adjusting USP in its discussion of the tax base issue in *Federal–Mogul,* 17 CIT at ——, 813 F.Supp. at 865–66.

Defendant relies on *Zenith* to support its position. Although the ITA's Remand Results do not explicitly cite to footnote 4, this is the ITA's primary support for its mistaken belief that its new VAT methodology is not in conflict with the body of the *Zenith* opinion and the language of the statute. *Defendant's Opposition* at 3–9; *Defendant's Rebuttal* at 5–9. However, this Court finds that footnote 4 is clearly at odds with the body of *Zenith* and the language of the statute and is dicta.

The court in *Zenith* states that "[t]itle 19 explicitly requires Commerce to increase USP by the amount of tax that the exporting country *would have assessed on the merchandise if it had been sold in the home market.*" 988 F.2d at 1580 (emphasis added). It is clear from this statement, as well as the language of the statute itself, that the sale price to which the VAT rate is to be applied is the USP calculated at the same point in the chain of commerce where the United Kingdom's tax authorities apply the United Kingdom's VAT to home market sales. For example, if when taxing home market sales, the United Kingdom's tax authorities apply the United Kingdom's VAT rate to an ex-factory price to calculate the amount of tax due, the ITA is required to apply the United Kingdom's VAT rate to an ex-factory USP and add the resulting amount to USP. 19 U.S.C. § 1677a(d)(1)(C).

Support for this position is provided by the Court of Appeals for the Federal Circuit's recent decision on the tax base issue in *Daewoo Elecs. Co. v. United States,* 6 F.3d 1511 (Fed.Cir.1993). The court in *Daewoo* stated that 19 U.S.C. § 1677a(d)(1)(C)

> mandates a calculation of imputed tax amounts to be added to the USP, *but does*

*not specify to which USP the Korean taxes are to be applied as the product moves to the consumer.* This determination is important because the Korean taxes are not a specific amount, but instead ad valorem in nature; and·it is difficult because the question is a hypothetical. *The Korean taxes must be applied to sales of goods at some discrete moment in the stream of commerce with or in the United States, a different market from that in which the taxes should be levied, but are not, because of exportation.*

*Daewoo*, at 1519 (emphasis added). In the *Daewoo* case, the ITA determined that evidence on the administrative record showed that the Korean tax authorities applied their *ad valorem* taxes to "the net price of the delivered television receivers to unrelated dealers." *Id.* at 1519. Therefore, the ITA applied the Korean tax rate to the comparable USP, *i.e.*, the price to the first unrelated purchaser. *Id.* at 1519. The court went on to affirm the ITA's methodology of determining where in the stream of commerce the Korean authorities applied the *ad valorem* tax rate in the home market and applying the same tax rate to USP calculated at the same point in the chain of commerce and adding this amount to USP. *Id.* at 1519–20.

Therefore, since as a matter of law the ITA has incorrectly adjusted USP for the United Kingdom's VAT, and since there is no just reason for delay in the entry of final judgment on this issue, this Court is entering final judgment on this issue ordering the ITA to apply the United Kingdom's VAT rate to USP calculated at the same point in the stream of commerce where the United Kingdom's tax authorities apply the United Kingdom's VAT rate to home market sales and add the resulting amount to USP. Furthermore, the ITA is required to recalculate margins for all respondents because these margins may be used as BIA in subsequent proceedings.

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that since as a matter of law the Department of Commerce, International Trade Administration ("ITA"), has incorrectly adjusted United States price ("USP") for the United Kingdom's value added tax ("VAT"), and since there is no just reason for delay in the entry of final judgment on this issue, this Court is entering final judgment on this issue ordering the ITA to recalculate dumping margins for all respondents by applying the United Kingdom's VAT rate to USP calculated at the same point in the stream of commerce where the United Kingdom's tax authorities apply the VAT rate to home market sales and add the resulting amount to USP; and it is further

**ORDERED** that this case is dismissed.

