The TORRINGTON COMPANY, Plaintiff,

v.

UNITED STATES, Defendant,

NMB Thai Ltd., Pelmec Thai Ltd. and NMB Corporation, Defendant–Intervenors.

Court No. 91–08–00564.

United States Court of International Trade.

June 8, 1993.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Velta A. Melnbrencis and Jane E. Meehan); of counsel: Alicia Greenidge, Dean A. Pinkert and Craig R. Giesze, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Tanaka Ritger & Middleton (H. William Tanaka, Michele N. Tanaka and Michael J. Brown), Washington, DC, for defendant-intervenors NMB Thai Ltd., Pelmec Thai Ltd. and NMB Corp.

Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Geert De Prest, Margaret E.O. Edozien, Lane S. Hurewitz, Robert A. Weaver and Margaret L.H. Png), Washington, DC, for plaintiff.

## OPINION

TSOUCALAS, Judge:

Plaintiff, The Torrington Company ("Torrington"), commenced this action to challenge certain aspects of the Department of Commerce, International Trade Administration's ("ITA") final results in the first administrative review of imports of antifriction bearings from Thailand. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Thailand; Final Results of Antidumping Duty Administrative Review ("Final Results ")*, 56 Fed.Reg. 31,765 (1991). Substantive issues raised by the parties in the underlying administrative proceeding were addressed by the ITA in the issues appendix to *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review ("Issues Appendix ")*, 56 Fed.Reg. 31,692 (1991).

### Background

On June 11, 1990, the ITA initiated an administrative review of imports of ball bearings and parts thereof from Thailand. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews,* 55 Fed.Reg. 23,575 (1990).

On March 15, 1991, the ITA published its preliminary determination in the administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts thereof from Thailand; Preliminary Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 11,195 (1991).

On July 11, 1991, the ITA published its Final Results in this proceeding. *Final Results,* 56 Fed.Reg. 31,765.

Torrington moves pursuant to Rule 56.1 of the Rules of this Court for summary judgment on the administrative record alleging that the following actions by the ITA were unsupported by substantial evidence on the administrative record and not in accordance with law: the ITA's (1) use of a methodology

for adjusting United States price ("USP") and Foreign Market Value ("FMV") for Thailand's value added tax ("VAT") that granted a circumstance of sale ("COS") adjustment to FMV to achieve tax neutrality; (2) method of calculating cash deposit rates for estimated duties; (3) treatment of antifriction bearings imported into foreign trade zones ("FTZ"); and (4) in regard to ESP transactions, allowance of an adjustment to FMV for inventory carrying costs. *Memorandum of Points and Authorities in Support of The Torrington Company's Motion for Summary Judgment on the Agency Record ("Torrington's Memorandum")* at 17–48.

### Discussion

The Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### 1. Circumstance of Sale Adjustment to FMV for Value Added Tax

Torrington challenges the ITA's use of a methodology for adjusting USP and FMV for Thailand's VAT that granted a COS adjustment to FMV to achieve tax neutrality. *Torrington's Memorandum* at 36–40.

Defendant argues that its actions were supported by substantial evidence on the administrative record and otherwise in accordance with law. *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("Defendant's Memorandum")* at 25–54.

For a more detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co. v.* *United States*, 17 CIT ——, —— – ——, 818 F.Supp. 1563 (1993).

This Court has fully addressed these arguments and adheres to its decision on this issue in *Federal–Mogul Corp. v. United States*, 17 CIT ——, —— – ——, 813 F.Supp. 856 (1993). This Court remands this issue to the ITA to allow the ITA to add the full amount of VAT paid on home market sales to FMV without adjustment.

### 2. Calculation of Cash Deposit Rates

In this administrative review, the ITA used two different methodologies for the actual calculation of dumping margins in cases where ESP sales were used: one for assessing duties on entries covered by the review, and the other for setting the cash deposit rate on future entries of the subject merchandise. *Final Results*, 56 Fed.Reg. at 31,-767–69; *Issues Appendix*, 56 Fed.Reg. at 31,698–702. To calculate the assessment rate for ESP sales, the ITA "divide[d] the total PUDD [potential uncollected dumping duties—calculated as the total difference between foreign market value and U.S. price for an exporter] for the reviewed sales by the *total entered value* of those reviewed sales...." *Issues Appendix*, 56 Fed.Reg. at 31,698–99 (emphasis added). To calculate the estimated cash deposit rate for ESP sales, the ITA "divided the total PUDD for each exporter by the *total net U.S. price* for that exporter's sales...." *Id.* at 31,699 (emphasis added).

Torrington argues that the ITA's use of a methodology which results in an estimated cash deposit rate different from the assessment duty rate was unsupported by substantial evidence on the record and not in accordance with law. *Torrington's Memorandum* at 17–23.

Defendant argues that its actions were supported by substantial evidence on the administrative record and otherwise in accordance with law. *Defendant's Memorandum* at 6–13. In addition, defendant argues that this issue is moot because of the publication of superseding cash deposit rates in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty*

*Administrative Reviews,* 57 Fed.Reg. 28,360 (1992). *Defendant's Memorandum* at 3–6.

For a more detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.,* 17 CIT at ——-——, 818 F.Supp. 1563.

The Court agrees with the defendant that this issue is now moot. However, the Court directs the defendant to this Court's decision on this issue in *Federal–Mogul,* 17 CIT at ——-——, 813 F.Supp. 856.

### 3. *Treatment of Antifriction Bearings Imported into Foreign Trade Zones*

Torrington challenges the ITA's refusal to require cash deposit of estimated antidumping duties on entries of antifriction bearings ("AFBs") imported into foreign trade zones. *Torrington's Memorandum* at 23–34.

For a detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.,* 17 CIT at ——-——, 818 F.Supp. 1563.

■ This Court adheres to its decision on this issue in *Torrington Co.,* 17 CIT at ——-——, 818 F.Supp. 1563. This Court finds that the Foreign Trade Zone statute on its face exempts foreign merchandise within a FTZ from the imposition of antidumping duties until that merchandise is brought into the U.S. customs territory, unless some other provision of the Foreign Trade Zone statute or the regulations promulgated pursuant to that law require otherwise.

At the time of the imports in question the only way that antidumping duties could be applied to foreign merchandise within a FTZ was if that merchandise was declared privileged pursuant to 19 C.F.R. § 146.41 (1991). While it is true that the FTZ Board has required such a declaration in granting applications for the creation or modification of a zone in the past, this Court finds no support for the contention that the ITA was *required* to request the FTZ Board, or that the FTZ Board was required on its own initiative, to impose such restrictions on all preexisting FTZs. Therefore, this Court finds that *at the time of the imports in question* there was no statute or regulation that required that antidumping duties be imposed on merchan-

dise imported into a FTZ until such time as the merchandise enters the U.S. customs territory.

■ Torrington also argues that imports of AFBs from Thailand into FTZs which were subsequently re-exported to a third country, without entering the customs territory of the U.S., should be subject to cash deposits and assessment of antidumping duties. *Torrington's Memorandum* at 34–35.

For the reasons stated above and in this Court's opinion in *Torrington Co.,* 17 CIT at ——-——, 818 F.Supp. 1563, this Court finds that AFBs imported into FTZs and re-exported without entering the U.S. customs territory are not subject to cash deposits and assessment of antidumping duties. *See also Torrington Co.,* 17 CIT at ——-——, 818 F.Supp. 1563 (AFBs imported into U.S. and reexported without sale in U.S. not subject to assessment of antidumping duties).

### 4. *Inventory Carrying Costs*

In the Final Results of this administrative review the ITA correctly adjusted ESP for imputed inventory carrying costs pursuant to 19 U.S.C. § 1677a(e)(2) (1988). Torrington does not challenge this adjustment.

■ Pursuant to its new administrative practice, the ITA also made a corresponding adjustment to FMV for imputed inventory carrying costs when comparing ESP sales to FMV sales.

Torrington objects to this adjustment by the ITA to FMV for imputed inventory carrying costs. *Torrington's Memorandum* at 40–48.

For a detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.,* 17 CIT at ——-——, 818 F.Supp. 1563.

This Court adheres to its decision on this issue in *Torrington Co.,* 17 CIT at ——-——, 818 F.Supp. 1563, and finds that the ITA's adjustment to FMV for imputed inventory carrying costs pursuant to 19 C.F.R. § 353.56(b)(2) (1991) was a reasonable exer-

cise of the ITA's discretion in implementing the antidumping duty statute and is affirmed.

### Conclusion

In accordance with the foregoing opinion, this case is remanded to the ITA to add the full amount of VAT paid on each sale in the home market to FMV without adjustment. ITA's determination is affirmed in all other respects. Remand results are due within thirty (30) days of the date this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

### ORDER

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that plaintiff's motion for judgment on the agency record is granted in part and this case is remanded to the Department of Commerce, International Trade Administration ("ITA"), to add the full amount of value added tax paid on each sale in the home market to foreign market value without adjustment; and it is further

**ORDERED** that the ITA's determination is affirmed in all other respects; and it is further

**ORDERED** that remand results are due within thirty (30) days of the date this opinion is entered, comments or responses by the parties to the remand results are due within thirty (30) days thereafter and any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.