861 F.Supp. 150

TIMKEN CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND NTN BEARING CORP. OF AMERICA, AMERICAN NTN BEARING MANUFACTURING CORP., NTN CORP., KOYO SEIKO CO., LTD., KOYO CORP. OF U.S.A., NSK LTD., AND NSK CORP., DEFENDANT-INTERVENORS

Court No. 92–03–00161

(Dated September 14, 1994)

*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., William A. Fennell, Julie Chasen Ross, Patrick McDonough* and *Edith A. Eisner)* for plaintiff, The Timken company.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil division, U.S. Department of Justice *(Velta A. Melnbrencis,* Assistant Director); of counsel: *Linda S. Chang* and *Joan L. MacKenzie,* Attorney-Advisors, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

*Barnes, Richardson & Colburn (Donald J. Unger, Lawrence W. Friedman, Robert E. Burke,* and *Jesse M. Gerson)* for defendant-intervenors, NTN Bearihg Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation.

*Powell, Goldstein, Frazer & Murphy (Peter O. Suchman, Susan P. Strommer* and *Niall P. Meagher)* for defendant-intervenors, Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.

*Coudert Brothers (Robert A. Lipstein, Matthew P. Jaffe, Grace W. Lawson* and *Nathan V. Holt)* for defendant-intervenors, NSK Ltd. and NSK Corporation.

## OPINION

Tsoucalas, *Judge:* Plaintiff, The Timken Company ("Timken"), challenges certain aspects of the Department of Commerce, International Trade Administration's ("Commerce") final results of the third administrative review of certain tapered roller bearings ("TRBs") from Japan. *Tapered Roller Bearings, and Parts Thereof, Finished and Unfinished, From Japan; Final Results of Antidumping Duty Administrative Review ("Final Results"),* 57 Fed. Reg. 4,960 (Feb. 11, 1992)

## BACKGROUND

In 1987, Commerce published an antidumping duty order on TRBs from Japan. *Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan,* 52 Fed. Reg. 37,352 (Oct. 6, 1987).

In 1991, Commerce published the final results of its first administrative review of TRBs covered by the 1987 order. *Tapered Roller Bearings, Finished and Unfinished, and Parts Thereof, From Japan; Final Results of Antidumping Duty Administrative Review,* 56 Fed. Reg. 41,508 (Aug. 21, 1991). In 1992, Commerce published the final results of its second administrative review of TRBs covered by the 1987 order, covering the period October 1, 1988 through September 30, 1989. *Tapered Roller Bearings, Finished and Unfinished, and Parts Thereof, From Japan; Final Results of Antidumping Duty Administrative Review,* 57 Fed. Reg. 4,951 (Feb. 11, 1992).

In 1992, Commerce published the final results of the third administrative review of TRBs covered by the 1987 order, covering the period October 1, 1989 through September 30, 1990. *Final Results,* 57 Fed.

Reg. 4,960. Commerce later published an amendment to the final results. *Tapered Roller Bearings, and Parts Thereof, Finished and Unfinished, From Japan; Amendment to Final Results of Antidumping Duty Administrative Review,* 57 Fed. Reg. 9,104 (March 16, 1992).

Timken moves pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record, alleging the following actions by Commerce were unsupported by substantial evidence on the agency record and not in accordance with law: (1) exclusion of sample sales and sales allegedly made outside the ordinary course of trade; (2) adoption of an "all other" rate established during the review; (3) failure to deduct related-importer resale profits from U.S. prices ("USPs") when calculating exporter's sale price ("ESP"); (4) circumstance of sale ("COS") adjustment to foreign market value ("FMV") for Japanese consumption tax, or value-added tax, ("VAT") forgiven on exports; (5) refusal to collect estimated antidumping duties on foreign trade zone ("FTz") admissions; and (6) clerical errors.

## DISCUSSION

The Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

A final determination by Commerce in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F. Supp. 1252, 1255 (1988).

### 1. *Sales Made Outside the Ordinary Course of Trade:*

Commerce has excluded from its calculation of foreign market value NTN home market sales identified as sales not made in the "ordinary course of trade." Commerce described these sales as trial sales for evaluation by customers, sales of sample merchandise and sales of very small quantities on a spot basis in unusual circumstances. Commerce determined that exclusion of these sales would not meaningfully affect the results of its review due to the significant number of home market sales transactions. *Final Results,* 57 Fed. Reg. at 4,966.

Timken claims this treatment of the sales is unsupported by substantial evidence and departs from Commerce's practice. Timken contends that Commerce's determination is supported only by NTN's assertion that the sales at issue are not in the ordinary course of trade and that sales merely alleged to be outside the ordinary course of trade but not so demonstrated should be included in calculation of foreign market value. *Memorandum in Support of Plaintiff's 56.2 Motion for Judgment on the Agency Record ("Timken's Brief")* at 14–19.

Timken further asserts it is not the number of home market sales excluded that is relevant, but rather, the similarity of those sales to the

U.S. sales at issue. Thus, Timken argues, even a single home market sale which is "most similar" to a large volume of U.S. sales would have a significant effect on these results. *Timken's Brief* at 12–14.

Commerce is of the opinion that it should reconsider this issue, and requests a remand of this issue so that it may do so. *Defendant's Memorandum in Partial Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("Defendant's Brief")* at 7.

Defendant-intervenors NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation ("NTN") contend the exclusion of these sales was proper because Commerce acted within its broad discretion to determine whether a sale is made in the ordinary course of trade. Further, NTN argues Commerce acted consistently with its practice of excluding sales allegedly not in the ordinary course of trade when a respondent demonstrates the sales were in small quantities at prices that were not representative of the vast majority of sales reported. NTN asserts it provided sufficient explanation of the nature and identity of the sales at issue to Commerce and that it is for Commerce, and not Timken, to judge the adequacy of the information submitted. NTN urges this Court to affirm Commerce's decision not to include the sales in its analysis. *Response Brief of Defendant-Intervenors NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation to Plaintiff's Motion for Judgment on the Agency Record ("NTN's Brief")* at 7–14.

In addition, NTN argues that this Court may not order a remand on this issue simply because Commerce has decided it would like to reconsider its determination. Such a remand, after a final determination and a full presentation of arguments at the administrative level, NTN asserts would violate the interests of speedy and fair determinations and administrative finality. NTN also states that Commerce's power to reconsider a final determination is limited to clerical errors, and does not include power to review the methodology or policy decisions made in a completed review. NTN states that Commerce is simply considering a policy change and wishes to use a court-ordered remand to re-open a decided issue. *Reply of Defendant-Intervenors NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, and NTN Corporation to Defendant's Response to Plaintiff's Motion for Judgment on the Agency Record ("NTN's Reply")* at 2–18. In sum, NTN questions by what authority this Court may remand this issue to allow Commerce to reconsider its final determination. *Id.* at 11.

This Court is clearly vested with the power to order a remand to Commerce. The relevant statutory provision permits this Court the broadest latitude in selecting relief. 28 U.S.C. § 2643(c)(1) (1988). With certain exceptions not relevant here, 28 U.S.C. § 2643(c)(1) permits this Court to order any appropriate form of relief including, but not limited to, orders of remand.

Before ordering a remand, the Court must consider whether an action of Commerce was supported by substantial evidence and was in accordance with law. Upon examination of the administrative record in this case, this Court finds that Commerce's exclusion from its calculation of FMV NTN home market sales identified as not made in the "ordinary course of trade" was not supported by substantial evidence. The record indicates there was little more than an allegation by NTN that the sales at issue were not in the ordinary course of trade. In exhibits B–1–G to B–1–L to its questionnaire response, NTN only segregates sales it regards to be outside the ordinary course of trade, listing transactions which consist of credit memos for price changes and returns, invoices with a unit price of zero, sales of samples and small quantity sales (shipment of five pieces or less per month). Public Document Number 67 at 15, exhibits B–1–G to B–1–L. In its supplemental questionnaire response, NTN went on to define these various transactions with more specificity, but did not set out any relevant data. Public Document Number 90 at 4–7. Commerce, however, had specifically requested more data on these transactions in its deficiency letter. Public Document Number 80 at 2. Therefore, this Court remands this issue for reconsideration by Commerce.

2. *"All Other Rate":*

For manufacturers and exporters who were not covered in this review, a prior review, or in the original less-than-fair-value ("LTFV") investigation, and who had therefore received the LTFV "all other" cash deposit rate, Commerce used an "all other" rate of 45.95%. *Final Results*, 57 Fed. Reg. at 4,974. After the correction of various clerical errors, Commerce revised the "all other" rate in the amendment to the final results, determining it to be 21.49%. *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan; Amendment to Final Results of Antidumping Duty Administrative Review*, 57 Fed. Reg. at 9,105.

Timken asserts the adoption of the "all other" rate of 21.49% is contrary to 19 U.S.C. § 1675(a)(2) (1988) and to 19 C.F.R. § 353.22(e) (1992) which requires that antidumping duties for unreviewed firms be assessed automatically at the cash deposit rate established in the original investigation.[1] *Timken's Brief* at 20–21. In the original investigation, Commerce determined the "all other" cash deposit rate to be 36.52%. *Amendment to Final Determination of Sales at Less Than Fair Value and Amendment to Antidumping Duty Order; Tapered Roller*

---

[1] 19 C.F.R. § 353.22(e) *"Automatic assessment of duty"* states in part:

(1) For orders, *if the Secretary does not receive a timely request under paragraph (a)(1), (a)(2), or (a)(3) of this section, the Secretary,* without additional notice, *will* instruct the Customs Service to assess antidumping duties on the merchandise described in paragraph (b) of this section at rates equal to the cash deposit of, or bond for, estimated antidumping duties required on that merchandise at the time of entry, or withdrawal from warehouse, for consumption and to *continue to collect the cash deposits previously ordered.*

(2) If the Secretary receives a timely request under paragraph (a)(1), (a)(2), or (a)(3) of this section, the Secretary in accordance with paragraph (e)(1) of this section will instruct the Customs Service to assess antidumping duties, *and to continue to collect the cash deposits, on the merchandise not covered by the request.*

(Emphasis added).

*Bearings and Parts Thereof, Finished and Unfinished, From Japan*, 52 Fed. Reg. 47,955 (Dec. 17, 1987). Therefore, Timken argues, 36.52% should be the "all other" cash deposit rate for this review. *Timken's Brief* at 21–27.

In addition, Timken argues that Commerce's use of the new "all other" rate is contrary to the reasoning articulated by Congress when it amended the antidumping duty statute to make administrative reviews conditional upon a request by an interested party. *Id.* at 22–25.

In the alternative, Timken urges this Court to order Commerce to adopt an "all other" cash deposit rate based on the highest rate, including best information otherwise available rates, for any firm with shipments during the period of the administrative review. Tiinken indicates that the rate established for Koyo Seiko Company Ltd. in the first published final results determination, 23.24%, was the highest rate for any firm with shipments in the review period. *Timken's Brief* at 26–27.

Commerce, too, requests a remand, but only to establish Koyo's 23.24% as the "all other" rate, as it is the highest rate for any firm with shipments during the period of the administrative review. Defendant refutes Timken's position by asserting, as it has done before, that no statute or regulation requires Commerce to retain the original deposit rate as the "all other" rate for unreviewed firms and that it was obligated to revise its prior practice of establishing two separate rates because the Customs Service was unable to administer two separate rates. Commerce, therefore, adheres to its decision that it properly decided to revise the "all other" rate after correction of 6lerical errors. *Defendant's Brief* at 8–11.

This Court adheres to its decision on this issue in *Federal-Mogul Corp. v. United States*, 17 CIT 442, 447, 822 F. Supp. 782, 788 (1993), based on the rationale stated therein. This Court finds that Commerce's use of a new "all other" rate calculated during this administrative review for unreviewed companies for which a previous "all other" cash deposit rate was established is not in accordance with law. This issue is remanded to Commerce for reinstatement of the "all other" cash deposit rate established in the original investigation, 36.52%. *Amendment to Final Determination of Sales at Less Than Fair Value and Amendment to Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan*, 52 Fed. Reg. 47,955.

### 3. *Deduction of Profits From Exporter's Sales Price*

Timken alleges Commerce improperly failed to deduct related-importer resale profits in calculating ESP, asserting that Congress intended such a deduction be made. Timken asserts that this failure undermines the concept of ESP and deprives U.S. industry of the remedy afforded by law. According to Timken, allowing the reseller (the importer) to retain its profit artificially inflates USP and reduces dumping margins. Timken respectfully disputes this Court's previous deci-

sions on this issue, which have upheld Commerce's failure to deduct importer resale profits. *Tiniken's Brief* at 28–33.

Anticipating defendant's objection to this argument, Timken claims this issue is properly before the Court even though Timken did not raise it at the administrative level, as it is not necessary to raise futile issues at the administrative level solely to preserve them for judicial review. Timken asserts the futility doctrine applies here because Commerce has clearly expressed its position on this issue in numerous past proceedings and to have raised the issue before Commerce would have served no good purpose. Finally, Timken states there is no prejudice to Commerce by Timken raising this issue before the Court. *Timken's Brief* at 33–35.

Because Timken did not raise this issue before Commerce or in its complaint and this Court denied Timken's motion for leave to amend the complaint to raise this issue, defendant argues this issue is not properly before this Court for review. In the alternative, defendant points out the previous occasions on which this Court has rejected Timken's argument on this issue and urges this Court to do so again. *Defendant's Brief* at 11.

Both defendant-intervenors Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. ("Koyo") and defendant-intervenors NSK Ltd and NSK Corporation ("NSK") argue that Timken's arguments regarding this issue should not be considered by this Court because the issue was not properly raised by Timken in its complaint. *Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Judgment on the Agency Record ("Koyo's Brief")* at 8; *Memorandum of Points and Authorities in Opposition to Plaintiff's 56.2 Motion for Judgment on the Agency Record ("NSK's Brief")* at 2.

Timken, by motion filed April 1, 1993, attempted to amend its complaint to include this issue. This Court rejected Timken's motion by an order dated April 13, 1993. Although Timken did not exhaust its administrative remedies, this Court agrees that it would have been futile to do so and deems this issue is properly before the Court.

However, having already ruled against Timken on this issue on numerous occasions, this Court rejects Timken's arguments. This Court has consistently held that Commerce is not required to deduct the profits of an importer from its calculation of ESP. *See, e.g., Timken Co. v. United States*, 16 CIT 429, 437, 795 F. Supp. 438, 445 (1992); *see also Timken Co. v. United States*, 10 CIT 86, 102–11, 630 F. Supp. 1327, 1341–48 (1986). This Court adheres to those decisions and, therefore, Commerce's action regarding this issue is affirmed.

### 4. COS Adjustment to FMV for Forgiven VAT:

Timken alleges Commerce erred in making a circumstance of sale adjustment to foreign market value for the Japanese consumption tax forgiven on exports. Timken states Commerce acted contrary to 19 U.S.C. § 1677a(d)(1)(C) (1988) which requires an upward adjustment to USP for VAT not collected on exports to the United States, to make USP

comparable to home market prices that already include the fully assessed VAT. In accordance with this provision, decisions of this Court and *Zenith Elec. Corp. v. United States*, 988 F.2d 1573 (Fed. Cir. 1993), *reh'g, en banc, denied*, 1993 U.S. App. LEXIS 10,358 (Fed. Cir. 1993), Timken urges this Court instruct Commerce to recalculate the margin with an adjustment only to USP and without a COS adjustment to FMV. *Timken's Brief* at 36–40.

Defendant agrees with Timken and requests that this issue be remanded for a recalculation of the dumping margins without a COS adjustment. *Defendant's Brief* at 11–12.

In *Zenith*, the Court of Appeals for the Federal Circuit held that Commerce may not use a COS adjustment to account for home market VAT. *Zenith*, 988 F.2d at 1580–82. The Court noted that adjusting USP alone distorted the dumping margin, as a result of a "multiplier effect" inherent in the way taxes are assessed. *Id.* at 1578. The Court, however, concluded that this distortion is inevitable and was clearly contemplated by Congress. *Id.* at 1580–82. The Court held the exporters responsible for the multiplier effect and did not require any accounting or compensating for the effect. *Id.* In what is clearly dicta, the Court did, however, contemplate that Commerce could eliminate the multiplier effect by adjusting USP by amount, rather than by rate, of *ad valorem* tax. *Id.* at 1582. The dicta appear in footnote 4:

> [19 U.S.C. § 1677a(d)(1)(C)] by its express terms allows adjustment of USP in the *amount* of taxes on the merchandise sold in the country of exportation. While perhaps cumbersome, Commerce may eliminate the multiplier effect by adjusting USP by the amount, instead of the rate, of the *ad valorem* tax.

*Id.*

On the basis of that language, NTN and NSK suggest this Court require Commerce adjust USP in this case by the amount, and not the rate, of the forgiven VAT. *NTN's Brief* at 14–16; *NSK 's Brief* at 5–11. Timken disagrees, arguing.Commerce must not adhere to the methodology suggested in the *Zenith* footnote as it is contrary to the substantive holding of the case. *Plaintiff's Reply to Defendant's and Defendant-Intervenors' Responses to Plaintiff's Motion for Judgment on the Agency Record ("Timken's Reply")* at 16–25.

This Court has already decided this issue and has found that footnote 4 is clearly at odds with the body of *Zenith* and the language of the statute. *Federal-Mogul Corp. v. United States*, 17 CIT 1093, 1097, 834 F. Supp 1391, 1396–97 (1993) . This Court declines to depart from its previous interpretation of *Zenith*, which is to require Commerce adjust USP by the rate of VAT forgiven in the foreign market, and *not* by the amount of forgiven VAT. *Id.*

Therefore, this issue is remanded so that Commerce may apply the rate of Japanese VAT forgiven to USP, calculated at the same point in the stream of commerce where the Japanese VAT is applied for home mar-

ket sales, and add the resulting amount to USP, without a COS adjustment to FMV.

### 5. *Collection of Antidumping Duties in Free Trade Zone:*

Commerce neither obtained information regarding TRBs admitted into a foreign trade zone nor required the collection of antidumping duty deposits on the merchandise. *Final Results*, 57 Fed. Reg. at 4,961. Timken contests this treatment. *Timken's Brief* at 41–49.

Timken alleges Commerce improperly determined that "entry" of merchandise pursuant to the antidumping law takes place only upon release of the merchandise into the U.S. customs territory and not upon its arrival into the geographic confines of the U.S. Timken argues that as the focus of the antidumping law is on importation of subject merchandise and that importation occurs when merchandise enters the geographic U.S., the deposit of antidumping duties should occur upon entry of subject merchandise into FTZs. In addition, Timken points out that foreign merchandise within a FTZ is considered imported for purposes of all U.S. laws except the customs laws of the United States (19 U.S.C. § 81c). Timken then argues the antidumping duty statute is not part of the customs law of the United States. Therefore, Commerce should be required to collect antidumping duties upon the importation into a FTZ of merchandise subject to an antidumping duty order. *Timken's Brief* at 45–48.

Timken also argues that proper reading of the FTZ Act, the antidumping law and a newly-promulgated regulation, which requires importers of subject merchandise to elect privileged status for imports to FTZs, compel Commerce to impose antidumping duties on goods transferred into FTZs. *Id.* at 41–45, 48–49; *see* 15 C.F.R. § 400.33(b) (1992) (effective from April 6, 1992).

Defendant responds by arguing that the reference to "entry" of merchandise in the antidumping statute unambiguously refers to the release of merchandise into the customs territory of the United States and does not refer to merchandise admitted into a FTZ. Defendant further argues that the reference to "customs laws" in the FTZ Act (19 U.S.C. § 81c) does include antidumping laws, thus exempting merchandise in a FTZ subject to an antidumping duty order from assessment of antidumping duties. Defendant points out that the regulation to which Timken refers requiring importers of merchandise subject to an antidumping duty order to elect privileged status for the merchandise was not effective until after the review period and publication of the final results in this case. Therefore, 15 C.F.R. § 400.33(b) does not grant Commerce the authority to order the merchandise in question to be admitted into FTZs under privileged status. *Defendant's Brief* at 12–14.

This Court has previously ruled on this issue and adheres to its decision in *Torrington Co.*, 17 CIT at 208–09, 818 F. Supp. at 1572 (1993); *see also Torrington Co. v. United States*, 17 CIT 545, 548, 826 F. Supp. 492, 494 (1993). This Court finds that the Foreign Trade Zone

statute on its face exempts foreign merchandise within a FTZ from the imposition of antidumping duties and from being subject to an antidumping administrative review until that merchan dise is brought into the U.S. customs territory, unless some other provision of the Foreign Trade Zone statute or the regulations promulgated thereunder require otherwise. *Torrington Co.*, 17 CIT at 208–09, 818 F. Supp. at 1572; *see also Torrington Co.*, 17 CIT at 548, 826 F. Supp. at 494. At the time of the imports in question, there was no statute or regulation that required that antidumping duties be imposed on merchandise imported into a FTZ or that such merchandise must be subjected to an antidumping administrative review until the merchan dise entered U.S. customs territory.

Subsequent to the issuance of the final results at issue, the FTZ Board revised its regulations to provide that merchandise subject to an anti dumping or countervailing duty order which enters an FTZ would be marked "privileged" and, thereby, subject to antidumping and coun ter-vailing duty laws. *See* 15 C.F.R. § 400.33(b)(2) (1992).[2]

The merchandise here involved, having been imported into the FTZs as "nonprivileged" merchandise, was transformed in the FTZs into articles not covered by the antidumping duty order on TRBs, and is not subject to the antidumping order. Thus, Commerce's decision on this issue is affirmed.

### 6. *Clerical Errors:*

Timken alleges certain clerical errors were committed by Commerce. Timken notes, with respect to NTN, that Commerce's cost test was per formed before sets were split into cups and cones and that, therefore, all home market sales are not likely to have been identified for comparison purposes. NTN disagrees, asserting Commerce should develop pro gramming language to correct the problem without performing the cost of production test after splitting. *NTN's Brief* at 17. Timken also notes, with respect to Koyo, that a computer programming error resulted in the deduction of certain expenses twice. Commerce agrees that these errors occurred and that this case should be remanded for correction. *Defendant's Brief* at 16.

Therefore, this case is remanded to Commerce for correction of the computer programming error with respect to Koyo and the cost test with respect to NTN.

Timken also asserts that Commerce committed a computer program-ming error with respect to one firm's TRBs because the program pro-vided that, to deem below-cost sales to have occurred over an extended

---

[2] Section 400.33(b), which became effective April 6, 1992, provides the following:

(b) *Restrictions on items subject to antidumping and countervailing duty actions*—(1) *Board policy.* Zone proce-dures shall not be used to circumvent antidumping (AD) and countervailing duty (CVD) actions under 19 CFR parts 353 and 355.

(2) *Admission of items subject to AD/CVD actions.* Items subject to AD/ CVD orders or items which would be otherwise subject to suspension of liquidation under AD/CVD procedures, it they entered U.S. Customs territory, shall be placed in privileged foreign status (19 CFR 146.41) upon admission to a zone or subzone. Upon entry for consumption, such items shall be subject to duties under AD/CVD orders or to suspension of liquidation, as appropriate, under 19 CFR parts 353 and 355.

period of time, the sales must have occurred within three months of each home market sales period. Timken argues that Com merce should correct the program so that below-cost sales in any three-month period would signal below-cost sales over an extended period of time for the entire review period. *Defendant's Brief* at 14.

Commerce responds that no error occurred and that the program functioned properly. Commerce explains that during the review period, the firm at issue entered TRBs that were sold during different fiscal years and, therefore, reported home market sales with corresponding dates of sale. Because the home market sales were not made during the same period of time, to determine whether below-cost sales were made over an extended period of time, Commerce considered sales that were made during different fiscal years separately and applied its three-month extended period of time test to sales made during a particular fis cal year, not to sales made during the entire period. Commerce then calculated FMV based upon the annual weighted-average net price for each fiscal year. Commerce maintains that since it considered home market sales made during different fiscal years separately, the program functioned as intended, applying the three-month test period to the sales made during each fiscal year. *Defendant's Brief* at 14–15. NTN agrees with Commerce. *NTN's Brief* at 16–17.

For below-cost sales to be disregarded in the determination of foreign market value, the below-cost sales must be made in substantial quantities and over an extended period of time.19 U.S.C. § 1677b(b) (1988). In sum, Timken alleges that Commerce has improperly required that these two requirements be met for each fiscal year of sales. This Court sees no basis for such an allegation and, finding Commerce acted reasonably and in accordance with law, affirms Commerce's action as to this issue.

CONCLUSION

In accordance with the foregoing opinion, this case is remanded to Commerce for: (1) reconsideration of its exclusion of sample sales and sales allegedly made outside the ordinary course of trade; (2) reinstate ment of the "all other" cash deposit rate established in the original investigation; (3) application of the rate of Japanese VAT forgiven to USP, calculated at the same point in the stream of commerce where the Japanese VAT is applied for home market sales, and addition of the resulting amount to USP, without a COS adjustment to FMV; and (4) correction of clerical errors, namely correction of a computer program and a cost test performed. Commerce's determination is affirmed in all other respects. Remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses are due within thirty (30) days thereaftet. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.