The TIMKEN COMPANY, Plaintiff,

v.

UNITED STATES, Defendant,

and

NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation; Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.; and NSK Ltd. and NSK Corporation, Defendant–Intervenors.

Slip Op. 94–150.
Court No. 92–03–00162.

United States Court of International Trade.

Sept. 23, 1994.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., William A. Fennell, Julie Chasen Ross, Patrick J. McDonough and Edith A. Eisner, Washington, DC, for plaintiff, the Timken Co.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, Asst. Director (Linda S. Chang and Joan L. MacKenzie, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel), for defendant.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Jesse M. Gerson and Lawrence M. Friedman, Chicago, IL, for defendant-intervenors, NTN Bearing Corp. of America, American NTN Bearing Mfg. Corp. and NTN Corp.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Susan P. Strommer and Niall P. Meagher, Washington, DC, for defendants-intervenors, Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Coudert Brothers, Robert A. Lipstein, Matthew P. Jaffe, Nathan V. Holt and Grace W. Lawson, Washington, DC, for defendants-intervenors, NSK Ltd. and NSK Corp.

## OPINION

TSOUCALAS, Judge:

Plaintiff, The Timken Company ("Timken"), challenges certain aspects of the Department of Commerce, International Trade Administration's ("Commerce") final results of the second administrative review of certain tapered roller bearings ("TRBs") from Japan. *Tapered Roller Bearings, Finished and Unfinished, and Parts Thereof, From Japan; Final Results of Antidumping Duty Administrative Review ("Final Results"),* 57 Fed.Reg. 4,951 (February 11, 1992).

### Background

In 1987, Commerce published an antidumping duty order on TRBs from Japan. *Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan,* 52 Fed.Reg. 37,352 (Oct. 6, 1987).

In 1991, Commerce published the final results of its first administrative review of TRBs covered by the 1987 order. *Tapered Roller Bearings, Finished and Unfinished, and Parts Thereof, From Japan; Final Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 41,508 (Aug. 21, 1991). In 1992, Commerce published the final results of its second administrative review of TRBs covered by the 1987 order, covering the period October 1, 1988 through September 30, 1989. *Final Results,* 57 Fed.Reg. 4,951. Timken contests the final results of the second administrative review.

Timken moves pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record, alleging the following actions by Commerce were unsupported by substantial evidence on the agency record and not in accordance with law: (1) exclusion of sample sales and sales allegedly made outside the ordinary course of trade; (2) choice of best information available ("BIA") for missing cost information; (3) failure to deduct related-importer resale profits from U.S. prices ("USPs") when calculating exporter's sales price ("ESP"); (4) refusal to collect estimat-

ed antidumping duties on foreign trade zone ("FTZ") admissions; and (5) clerical errors.

### Discussion

The Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

A final determination by Commerce in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

1. *Sales Made Outside the Ordinary Course of Trade*

Commerce has excluded from its calculation of foreign market value defendant-intervenors', NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation ("NTN"), home market sales identified as sales not made in the "ordinary course of trade." Commerce described these sales as trial sales for evaluation by customers, sales of sample merchandise and sales of very small quantities on a spot basis in unusual circumstances. Commerce determined that exclusion of these sales would not meaningfully affect the results of its review due to the significant number of home market sales transactions. *Final Results*, 57 Fed.Reg. at 4,959.

Timken claims this treatment of the sales is unsupported by substantial evidence and departs from Commerce's prior practice. Timken contends that Commerce's determination is supported only by NTN's assertion that the sales at issue are not in the ordinary course of trade and that sales merely alleged to be outside the ordinary course of trade but not so demonstrated should be included in calculation of foreign market value. *Memorandum in Support of Plaintiff's 56.2 Mo-*

tion for Judgment on the Agency Record ("*Timken's Brief*") at 13–16.

Timken further asserts it is not the number of home market sales excluded that is relevant, but rather, the similarity of those sales to the U.S. sales at issue. Thus, Timken argues, even a single home market sale which is "most similar" to a large volume of U.S. sales would have a significant effect on these results. *Timken's Brief* at 11–13.

Commerce requests a remand so that it may correct a discrepancy between the statement in the final results and the results actually taken. Commerce states that even though the final results state that Commerce excluded all of the sales NTN claimed were not in the ordinary course of trade, certain of those sales so claimed were included in the analysis. *Defendant's Memorandum in Partial Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("Defendant's Brief")* at 7.

NTN contends the exclusion of these sales was proper because Commerce acted within its broad discretion to determine whether a sale is made in the ordinary course of trade. Further, NTN argues Commerce acted consistently with its practice of excluding sales allegedly not in the ordinary course of trade when a respondent demonstrates the sales were in small quantities at prices that were not representative of the vast majority of sales reported. NTN asserts it provided sufficient explanation of the nature and identity of the sales at issue to Commerce and that it is for Commerce, and not Timken, to judge the adequacy of the information submitted. NTN urges this Court to affirm Commerce's decision not to include the sales in its analysis. *Response Brief of Defendant–Intervenors NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation to Plaintiff's Motion for Judgment on the Agency Record ("NTN's Brief")* at 6–12.

In addition, NTN alleges Commerce is merely using the pretext of a discrepancy which does not exist to request a remand so that it may reconsider this issue. NTN states that the inclusion of certain sales claimed to be outside the ordinary course of trade was to be considered a clerical error

and that Commerce had agreed, in conversations and meetings with NTN, that this error would be corrected by the issuance of amended results. As evidence of this agreement, NTN presents a letter from NTN to Commerce in which NTN notes that this error occurred. NTN states Commerce wishes merely to reconsider the issue through a remand. *Reply of Defendant–Intervenors NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, and NTN Corporation to Portion of Defendant's Response to Plaintiff's Motion for Judgment on the Agency Record* ("*NTN's Reply*") at 2–8.

NTN argues that this Court may not order a remand on this issue simply because Commerce has decided it would like to reconsider its determination. Such a remand, after a final determination and a full presentation of arguments at the administrative level, NTN asserts would violate the interests of speedy and fair determinations and administrative finality. According to NTN, a remand would only be appropriate in the case of a ministerial or clerical error and, in this case, Commerce has not alleged any error or mistake of fact. NTN also states that Commerce's power to reconsider a final determination is limited to clerical errors, and does not include power to review the methodology or policy decisions made in a completed review. NTN states that Commerce is simply considering a policy change and wishes to use a court-ordered remand to re-open a decided issue. *Id.* at 9–16. In sum, NTN questions by what authority this Court may remand this issue to allow Commerce to reconsider its final determination. *Id.* at 9.

■ This Court is clearly vested with the power to order a remand to Commerce. The relevant statutory provision permits this Court the broadest latitude in selecting relief. 28 U.S.C. § 2643(c)(1) (1988). With certain exceptions not relevant here, 28 U.S.C. § 2643(c)(1) permits this Court to order any appropriate form of relief including, but not limited to, orders of remand.

■ Before ordering a remand, the Court must consider whether an action of Commerce was supported by substantial evidence and was in accordance with law. Upon examination of the administrative record in this case, this Court finds that Commerce's exclusion from its calculation of FMV NTN home market sales identified as not made in the "ordinary course of trade" was not supported by substantial evidence. The record indicates there was little more than an allegation by NTN that the sales at issue were not in the ordinary course of trade. In exhibits B–1–M to B–1–R to its questionnaire response, NTN only segregates sales it regards to be outside the ordinary course of trade, listing transactions which consist of special trial sales to customers for evaluation, sales of samples and sales of very small quantities on a spot basis in unusual circumstances. Public Document Number 43 at 12–13, exhibits B–1–M to B–1–R. Therefore, this Court remands this issue for reconsideration by Commerce.

## 2. *Choice of BIA*

Timken contests Commerce's choice of BIA. According to Timken, to calculate adjustments for differences in sales price of similar merchandise, Commerce requested variable cost of production information for each model sold in the home market and the U.S. When respondents failed to supply cost information for a model, Commerce used twenty percent of a model's variable cost as best information for its matching model when a variable cost value was missing. Timken states that Commerce improperly matched models without cost information in one market with the model with which it would have been matched in the other market had cost information been provided. Timken alleges that, without the missing data, Commerce could not determine the most similar merchandise for proper model matching because part of the model match methodology requires the comparison of variable cost. Timken asserts Commerce should have used the highest margin rate alleged in the original investigation as best information for any sale of a U.S. model where cost information was missing. *Timken's Brief* at 17–19; *Final Results*, 57 Fed.Reg. at 4,952.

Commerce responds that, because Timken did not raise the selection of BIA in its complaint, the issue is not properly before

the Court for review. Alternatively, Commerce contends Timken's argument should be rejected because it is at the discretion of Commerce, not the parties, to decide whether to select adverse BIA and how adverse the information should be. Commerce asserts it reasonably selected twenty percent of the cost of manufacturing of either the U.S. or home market model as best information for the missing cost information because, under its model match methodology, a variable cost difference of more than twenty percent will eliminate a model that would be otherwise "similar" for price comparison purposes. *Defendant's Brief* at 8–10.

Defendant-intervenors Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. ("Koyo") point out that the Court rejected Timken's motion to amend its complaint to include this issue and argue that this issue is therefore not properly before the Court. Koyo notes that Timken filed its motion before it received the Court's order denying leave to amend its complaint and assumes that Timken would not have included the issue in its brief had it received the Court's order denying leave to amend. *Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Judgment on the Agency Record ("Koyo's Brief")* at 3.

■ This Court had denied Timken's motion to file an amended complaint to include this issue, by order dated April 13, 1993. Despite this denial, this Court finds that the antidumping statute is silent as to what constitutes best information available. 19 U.S.C. § 1677e (1988). Because Congress explicitly left a gap for the agency to fill, it is within Commerce's discretion to decide what constitutes best information available in a particular case and this Court must grant that decision considerable deference. *Allied–Signal Aerospace Co. v. United States*, 996 F.2d 1185, 1191–92 (Fed.Cir.1993). It is therefore within Commerce's discretion not to choose BIA most adverse to noncooperating parties. *Saha Thai Steel Pipe Co. v. United States*, 17 CIT ——, ——–——, 828 F.Supp. 57, 62–64 (1993).

■ This Court finds that Commerce exercised its discretion in this matter reason-

ably and in accordance with law. Commerce explained its choice of BIA:

> Because we consider only home market merchandise whose variable costs of manufacture are within 20 percent of those of U.S. merchandise to be of comparable value, we have calculated a difference in merchandise adjustment equal to 20 percent of home market costs as the best information available for U.S. models with no reported variable costs of manufacture.

*Final Results,* 57 Fed.Reg. at 4,952.

Therefore, this Court finds that Commerce's choice of BIA in this case is supported by substantial evidence and in accordance with law and is hereby affirmed.

3. *Deduction of Profits From Exporter's Sales Price*

Timken alleges Commerce improperly failed to deduct related-importer resale profits in calculating ESP, asserting that Congress intended such a deduction be made. Timken asserts that this failure undermines the concept of ESP and deprives U.S. industry of the remedy afforded by law. According to Timken, allowing the reseller (the importer) to retain its profit artificially inflates USP and reduces dumping margins. Timken respectfully disputes this Court's previous decisions on this issue, which have upheld Commerce's failure to deduct importer resale profits. *Timken's Brief* at 21–26.

■ Anticipating defendant's objection to this argument, Timken claims this issue is properly before the Court even though Timken did not raise it at the administrative level, as it is not necessary to raise futile issues at the administrative level solely to preserve them for judicial review. Timken asserts the futility doctrine applies here because Commerce has clearly expressed its position on this issue in numerous past proceedings and to have raised the issue before Commerce would have served no good purpose. Finally, Timken states there is no prejudice to Commerce by Timken raising this issue before the Court. *Timken's Brief* at 20–21.

Because Timken did not raise this issue before Commerce or in its complaint and this Court denied Timken's motion for leave to

amend the complaint to raise this issue, defendant argues this issue is not properly before this Court for review. In the alternative, defendant points out the previous occasions on which this Court has rejected Timken's argument on this issue and urges this Court to do so again. *Defendant's Brief* at 10.

Both Koyo and defendant-intervenors NSK Ltd. and NSK Corporation ("NSK") argue that Timken's arguments regarding this issue should not be considered by this Court because the issue was not properly raised by Timken in its complaint. *Koyo's Brief* at 3; *Memorandum of Points and Authorities in Opposition to Plaintiff's 56.2 Motion for Judgment on the Agency Record* ("*NSK's Brief*") at 2.

Timken, by motion filed March 11, 1993, attempted to amend its complaint to include this issue. This Court rejected Timken's motion by an order dated April 13, 1993. Although Timken did not exhaust its administrative remedies, this Court agrees that it would have been futile to do so and deems this issue is properly before the Court.

██ However, having already ruled against Timken on this issue on numerous occasions, this Court rejects Timken's arguments. This Court has consistently held that Commerce is not required to deduct the profits of an importer from its calculation of ESP. *See, e.g., Timken Co. v. United States,* 16 CIT 429, 437, 795 F.Supp. 438, 445 (1992); *see also Timken Co. v. United States,* 10 CIT 86, 102–11, 630 F.Supp. 1327, 1341–48 (1986). This Court adheres to those decisions and, therefore, Commerce's action regarding this issue is affirmed.

### 4. Collection of Antidumping Duties in Free Trade Zone

Commerce neither obtained information regarding TRBs admitted into a foreign trade zone nor required the collection of antidumping duty deposits on the merchandise. *Final Results,* 57 Fed.Reg. at 4,959. Timken contests this treatment. *Timken's Brief* at 27–35.

Timken alleges Commerce improperly determined that "entry" of merchandise pursuant to the antidumping law takes place only upon release of the merchandise into the U.S. customs territory and not upon its arrival into the geographic confines of the U.S. Timken argues that as the focus of the antidumping law is on importation of subject merchandise and that importation occurs when merchandise enters the geographic U.S., the deposit of antidumping duties should occur upon entry of subject merchandise into FTZs. In addition, Timken points out that foreign merchandise within a FTZ is considered imported for purposes of all U.S. laws except the customs laws of the United States (19 U.S.C. § 81c). Timken then argues the antidumping duty statute is not part of the customs law of the United States. Therefore, Commerce should be required to collect antidumping duties upon the importation into a FTZ of merchandise subject to an antidumping duty order. *Timken's Brief* at 27–35.

Timken also argues that proper reading of the FTZ Act, the antidumping law and a newly-promulgated regulation, which requires importers of subject merchandise to elect privileged status for imports to FTZs, compel Commerce to impose antidumping duties on goods transferred into FTZs. *Id.* at 30–31; *see* 15 C.F.R. § 400.33(b) (1992) (effective from April 6, 1992).

Defendant responds by arguing that the reference to "entry" of merchandise in the antidumping statute unambiguously refers to the release of merchandise into the customs territory of the United States and does not refer to merchandise admitted into a FTZ. Defendant further argues that the reference to "customs laws" in the FTZ Act (19 U.S.C. § 81c) does include antidumping laws, thus exempting merchandise in a FTZ subject to an antidumping duty order from assessment of antidumping duties. Defendant points out that the regulation to which Timken refers requiring importers of merchandise subject to an antidumping duty order to elect privileged status for the merchandise did not become effective until after the review period and publication of the final results in this case. Therefore, 15 C.F.R. § 400.33(b) does not grant Commerce the authority to order the merchandise in question to be admitted

into FTZs under privileged status. *Defendant's Brief* at 10–12.

NSK and NTN agree with the arguments made by Commerce. *NSK's Brief* at 3; *NTN's Brief* at 13.

■ This Court has previously ruled on this issue and adheres to its decision in *Torrington Co. v. United States*, 17 CIT ——, ——, 818 F.Supp. 1563, 1572 (1993); *see also Torrington Co. v. United States*, 17 CIT ——, ——, 826 F.Supp. 492, 494 (1993). This Court finds that the Foreign Trade Zone statute on its face exempts foreign merchandise within a FTZ from the imposition of antidumping duties and from being subject to an antidumping administrative review until that merchandise is brought into the U.S. customs territory, unless some other provision of the Foreign Trade Zone statute or the regulations promulgated thereunder require otherwise. *Torrington Co.*, 17 CIT at ——, 818 F.Supp. at 1572; *see also Torrington Co.*, 17 CIT at ——, 826 F.Supp. at 494. At the time of the imports in question, there was no statute or regulation that required that anti-dumping duties be imposed on merchandise imported into a FTZ or that such merchandise must be subjected to an anti-dumping administrative review until the merchandise entered U.S. customs territory.

■ Subsequent to the issuance of the final results at issue, the FTZ Board revised its regulations to provide that merchandise subject to an antidumping or countervailing duty order which enters an FTZ would be marked "privileged" and, thereby, subject to antidumping and countervailing duty laws. *See* 15 C.F.R. § 400.33(b)(2) (1992).[1]

The merchandise here involved, having been imported into the FTZs as "nonprivileged" merchandise, was transformed in the FTZs into articles not covered by the antidumping duty order on TRBs, and is not subject to the antidumping order. Thus, Commerce's decision on this issue is affirmed.

### 5. Clerical Errors

Timken alleges two clerical errors were committed by Commerce. *Timken's Brief* at 36–37. Timken states the wrong year was used on lines 860–61 of NTN's final computer program and lines 199–203 of NSK's final computer program fail to delete home market below-cost of production sales which are compared to U.S. sales. Commerce agrees these errors occurred and requests that this case be remanded for their correction. *Defendant's Brief* at 12.

NTN agrees that the wrong year was used on the final computer program and that this error should be corrected. *NTN's Brief* at 13.

According to NSK, no error occurred as to the deletion of home market below-cost of production sales. NSK contends the alleged error did not occur because Commerce made no price-to-price comparisons with merchandise determined to have been sold at less than the cost of production for an extended period of time. NSK reads lines 647 and 699–702 of Commerce's computer program as indicating that comparisons were made on the basis of constructed value, not price, when the home market product failed the cost test. NSK adds that Commerce's computer printouts also demonstrate that when merchandise failed the cost test, comparisons were made on the basis of constructed value, not price. *NSK's Brief* at 4–6.

Timken responds arguing that NSK has misinterpreted Timken's allegation. Timken states it does not contest that Commerce made price-to-price comparisons of U.S. sales solely to home market models which failed

---

1. Section 400.33(b), which became effective April 6, 1992, provides the following:
    (b) *Restrictions on items subject to antidumping and countervailing duty actions*—(1) *Board policy.* Zone procedures shall not be used to circumvent antidumping (AD) and countervailing duty (CVD) actions under 19 CFR parts 353 and 355.
    (2) *Admission of items subject to AD/CVD actions.* Items subject to AD/CVD orders or items which would be otherwise subject to suspension of liquidation under AD/CVD procedures, if they entered U.S. Customs territory, shall be placed in privileged foreign status (19 CFR 146.41) upon admission to a zone or subzone. Upon entry for consumption, such items shall be subject to duties under AD/CVD orders or to suspension of liquidation, as appropriate, under 19 CFR parts 353 and 355.

the cost test. Its argument is that sales of certain models which were below-cost and made in substantial quantities over an extended period of time were incorrectly included in the calculation of weighted-average home market prices along with above-cost sales of the same models. Timken asserts the computer program does not delete any sales of models for which more than ten percent but less than ninety percent of sales are below cost and it is the retention of these sales for comparison that Timken disputes. *Plaintiff's Reply to Defendant's and Defendant–Intervenors' Responses to Plaintiff's Motion for Judgment on the Agency Record* at 23–24.

The Court remands this issue for the correction of the year used on lines 860–61 of NTN's final computer program and for Commerce to determine whether NSK's final computer program fails to delete home market below-cost of production sales which are compared to U.S. sales. If the program does fail to delete below-cost sales, Commerce is to correct the error so that the proper sales are deleted.

### Conclusion

In accordance with the foregoing opinion, this case is remanded to Commerce for: (1) reconsideration of its exclusion of sample sales and sales allegedly made outside the ordinary course of trade; and (2) correction of any clerical errors. Commerce's determination is affirmed in all other respects. Remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.